In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2611

Clyde Piggie,

Petitioner-Appellant,

v.

Daniel McBride, Superintendent,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 99 C 561--Allen Sharp, Judge.

Submitted December 18, 2001--Decided January 17, 2002

   Before Posner, Manion, and Rovner, Circuit
Judges.

   Per Curiam.  Clyde Piggie, an Indiana
state prisoner, filed a petition for writ
of habeas corpus under sec. 2254, arguing
that he was denied due process of law in
a prison disciplinary hearing. The
district court denied Piggie's petition.
We vacate the district court's judgment
and remand this case to the district
court for further proceedings.

Background

   On May 7, 1999, correctional officer
LaDonna Ellis wrote a conduct report
charging Piggie with sexual assault for
squeezing her buttocks when he was
passing her in a prison hallway. On May
10, 1999, Piggie was given written notice
of a hearing before the prison's Conduct
Adjustment Board (or "CAB"), as reflected
in a screening report prepared by Officer
Jason Nowatzke. The screening report also
noted that Piggie requested a lay
advocate to represent him and that he be
permitted to call Officer Ellis as a
witness at the hearing. Piggie contends
that he also told Officer Nowatzke during
the screening interview that he wished to
have the CAB view the videotape from the
prison's surveillance camera that may
have recorded the incident. But, he says,
Nowatzke responded that the tape could

not be viewed without a court order. The screening report did not reflect Piggie's request for the tape.

Piggie pleaded not guilty and attended the disciplinary hearing on May 12, 1999. At the hearing Piggie denied squeezing Officer Ellis's buttocks but stated that he may have accidentally touched her when he passed by her in the hallway. Ellis did not testify but instead submitted a statement in which she asserted that her conduct report "stands as written." According to Piggie, at the hearing he again requested that the CAB view the surveillance tape, and he handed a written statement repeating that request to the CAB chairman. But, Piggie contends, the chairman told him there was no tape. The report of the hearing does not mention Piggie's request or state any reasons why the CAB did not view the tape. According to the state, the prison's policy was to reuse the surveillance tapes soon after they were recorded, and the tape no longer exists.

Based on Officer Ellis's report, the CAB found Piggie guilty of sexual assault. The CAB sentenced him to two years in disciplinary segregation and demoted him from good-time credit class II to credit class III. Piggie first appealed the CAB's decision to the prison superintendent, raising a number of issues including the CAB's failure to review the surveillance tape. In that regard he stated, "[i]f someone would please review the videotape of that date and time, it will show with no doubt the [sic] he is not guilty . . . . In a case like this one . . . it should be 'Manda tory' to review the video camera!" The superintendent affirmed the CAB's decision, stating that "the surveillance camera was not the basis for the generation of this conduct report, and it is noted that this issue was not raised during your screening nor at the time of your hearing." Piggie then appealed to the final reviewing authority of the Indiana Department of Corrections, and again he raised the videotape issue. This time he asserted that "upon being screened Piggie requested the videotape, but was denied!" The final reviewing authority also affirmed the CAB's decision.

Piggie then filed a petition for writ of

habeas corpus asserting seven grounds for relief. The district court initially granted his petition, holding that the CAB's denial of Piggie's timely request to have the videotape reviewed violated his due process rights under Wolff v. McDonnell, 418 U.S. 539, 566 (1974). The court therefore ordered that a new hearing be conducted with the tape, or if the tape no longer existed, that the IDOC reinstate Piggie's good-time credit earning classification and restore the credits he lost as a result of the demotion. The state, however, asked the district court to vacate its judgment pursuant to Federal Rule of Civil Procedure 59 on grounds that the prison superintendent's finding that Piggie failed to timely request the tape was binding on federal habeas review. In support of its motion to vacate, the state also submitted an affidavit from Officer Nowatzke asserting that if Piggie had requested the tape, he would have recorded Piggie's request on the screening report. In response Piggie reiterated that he made his request to Officer Nowatzke before the hearing and again to the CAB at the hearing. He also submitted an affidavit from his lay advocate who attested to having seen Piggie at the hearing provide the CAB with his written statement requesting that the CAB view the tape. The district court granted the state's motion and denied Piggie's petition on May 30, 2001.

Analysis

Piggie argues that the district court should not have denied habeas relief because his due process rights were violated by the CAB's refusal to view, or permit him access to, the surveillance tape that he says would have exculpated him. Indiana prisoners possess a liberty interest in good-time credits, and Indiana therefore must afford due process before reducing a prisoner's credit-earning class. Montgomery v. Anderson, 262 F.3d 641, 645 (7th Cir. 2001). TheSupreme Court has held that procedural due process requires, among other safeguards, that a prisoner "facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566. Wolff

does not, however, guarantee prisoners the unfettered right to call any witness or present any evidence they wish regardless of its relevance or necessity. Id.; see also Forbes v. Trigg, 976 F.2d 308, 318 (7th Cir. 1992) (due process did not require calling witness whose "testimony could have added little"). But the CAB "may not arbitrarily refuse to consider exculpatory evidence simply because other evidence in the record suggests guilt." Whitford v. Boglino, 63 F.3d 527, 536 (7th Cir. 1995) (quoting Viens v. Daniels, 871 F.2d 1328, 1336 n.2 (7th Cir. 1989)). And prisoners are entitled to have exculpatory evidence disclosed unless its disclosure would unduly threaten institutional concerns. Campbell v. Henman, 931 F.2d 1212, 1214–15 (7th Cir. 1991); Chavis v. Rowe, 643 F.2d 1281, 1286 (7th Cir. 1981).

Although the CAB need not explain at the hearing why it denied an inmate's request for witnesses or potentially exculpatory evidence, the CAB has the burden of proving that its denial was not arbitrary or capricious. See Ponte v. Real, 471 U.S. 491, 498-99 (1985). In its hearing report, however, the CAB said nothing about why it refused to view the surveillance tape. And the state has not suggested that the CAB's review of the tape, or the tape's disclosure to Piggie, would have jeopardized any institutional or correctional goals. To the contrary, the state concedes that the "security tape is documentary evidence that the CAB would be required to review if Piggie had requested the tape. Failure to do so would deprive Piggie of due process and would warrant relief in this action." The state instead argues that Piggie's due process rights were not violated because he did not request the tape prior to his CAB hearing. We agree that if Piggie failed to make such a request either before or at the hearing, then the CAB could not have denied him due process by not considering the request. McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999) (due process does not require "the consideration of evidence that could have been but was not presented at the hearing.").

We disagree, however, with the state's contention that the prison superintendent's finding on appeal that Piggie failed to timely request the tape

is binding on federal habeas review under 28 U.S.C. sec. 2254(e)(1). Section 2254(e)(1) speaks specifically of determinations made by "state courts," and not by prison disciplinary boards:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(Emphasis added.) This court has not yet addressed whether prison disciplinary boards may be considered "state courts" for purposes of sec. 2254(e)(1), and thus whether the state may benefit from the presumption of correctness. We have, however, recently addressed whether prison disciplinary boards are "courts" for purposes of 28 U.S.C. sec. 2254(d), and held that they are not. White v. Indiana Parole Board, 266 F.3d 759, 765–66 (7th Cir. 2001); see also Walker v. O'Brien, 216 F.3d 626, 637 (7th Cir. 2000) (holding that state prisoners challenging prison disciplinary proceedings need not obtain a certificate of appealability because the challenged detention does not "arise[ ] out of process issued by a State court."). But cf. Markham v. Clark, 978 F.2d 993, 994–95 (7th Cir. 1992) (CAB is tantamount to "state court" for purposes of sec. 2254(b) requirement of exhausting available state remedies). Because Indiana has chosen not to make judicial process available to review prison disciplinary board decisions, we explained, the state may not benefit from sec. 2254(d)'s limitation on the scope of collateral attack with respect to those decisions. See White, 266 F.3d at 766. Our reasoning in White applies equally to sec. 2254(e)(1), which expressly limits applicability of the presumption of correctness to a "determination of a factual issue made by a state court." Accordingly, we hold that the state may not benefit from sec. 2254(e)(1)'s presumption of correctness in appeals from prison disciplinary proceedings. Because the district court applied that presumption in vacating its judgment and denying habeas relief in this case, we

remand the case to the district court to determine (1) whether the surveillance tape has been erased by prison officials, and if so, when did they erase it; and (2) whether Piggie requested through authorized prison officials that the CAB view the surveillance tape, and if so, when did he do so. If the district court finds that Piggie made his request either before or at the CAB hearing and that the tape still existed at the time of his request, then, as the state concedes, relief should be granted.

Accordingly, we VACATE the district court's judgment and REMAND the case to the district court for further proceedings consistent with this opinion.